Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (VI)

| | | |
|---|---|---|
| KATHERINE M. ORTIZ CASTRO<br><br>Recurrida<br><br>v.<br><br>MASTER MOTORS LLC; POPULAR AUTO, LLC; POPULAR AUTO<br><br>Recurrente | KLRA202400329 | REVISIÓN JUDICIAL procedente del Departamento de Asuntos del Consumidor, Regional Mayagüez<br><br>Querella núm.: MAY-2023-0004235<br><br>Sobre: Compra Venta de Vehículos de Motor |

Panel integrado por su presidenta la jueza Ortiz Flores, el juez Rivera Torres, la jueza Rivera Pérez y el juez Campos Pérez.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 26 de agosto de 2024.

Comparece ante este tribunal apelativo, Master Motors, LLC. (Master Motors o el recurrente) mediante la *Petición de Revisión Judicial* de epígrafe solicitándonos que revoquemos la *Resolución* emitida por el Departamento de Asuntos del Consumidor (DACo) el 24 de abril de 2024, notificada el 29 de abril siguiente. Mediante el aludido dictamen, el DACo decretó la resolución del contrato de compraventa del vehículo de motor usado marca Nissan modelo Versa; así como el contrato de venta al por menor a plazos otorgado con Popular Auto, LLC.

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

### I.

El 28 de abril de 2023, la Sra. Katherine M. Ortiz Castro (la señora Ortiz Castro o la recurrida) presentó una *Querella* contra Master Motors, Popular Autor, LLC y Popular Auto solicitando se

resolviera el contrato de compraventa celebrado entre esta y Master Motor; así como el contrato de venta al por menor a plazos con Popular Auto, LLC o Popular Auto.[1] Asimismo, peticionó se le devolviera el dinero entregado en garantía. En síntesis, alegó que su consentimiento fue viciado en el proceso de comprar un vehículo de motor usado.

El 6 de julio de 2023, Master Motors presentó su *Contestación a la querella* negando los hechos allí expuestos y arguyó que esta adquirió un vehículo de motor de manera libre y voluntaria, aceptando las condiciones para la adquisición de este.[2]

Por su parte, el 31 de julio de 2023, la señora Ortiz Castro presentó una *Querella enmendada.*[3] Adujo que el 29 de marzo de 2023 acudió a las instalaciones de Master Motors para adquirir un vehículo y debido a que no poseía experiencia de crédito no sería posible adquirir una guagua tipo "SUV". Por lo que, le mostraron diferentes vehículos, entre ellos, una Nissan Versa del 2021, color gris oscuro, con aros y deportivo. Expresó que accedió a comprar el aludido vehículo y procedió a firmar los documentos para los cuales no fue orientada. Indicó que luego de terminar los trámites se dirigió a recoger el vehículo, pero le entregaron un Nissan Versa 2021, color gris claro diferente al que ella probó y accedió a comprar.

Agregó que al presentarse con esta situación, le cuestionó al empleado y este le contestó que el Nissan Versa 2021, gris oscuro con aros deportivo que había accedido comprar, ya había sido vendido.[4] Añadió que, debido a su inexperiencia, y ante la insistencia del vendedor, se llevó el vehículo, el cual tenía la gaveta defectuosa, las gomas defectuosas, la bocina no funcionaba, problemas en los frenos y otros defectos.[5] Finalmente decidió

---

[1] Véase, Apéndice del Recurso, a las págs. 1-7.
[2] *Íd.,* a las págs. 8-11.
[3] *Íd.,* a las págs. 12-15.
[4] *Íd.,* a la pág. 14.
[5] *Íd.*

entregar el vehículo a Master Motors y le notificó a estos, y a Popular Auto que deseaba rescindir la compra y el financiamiento del vehículo.

El 3 de agosto de 2023, Master Motors presentó su *Contestación a querella enmendada* en la cual nuevamente negó los hechos alegados y apuntaló que el vehículo adquirido no adolece de defecto o desperfecto alguno.[6]

El 10 de abril de 2024, se celebró la vista administrativa. La única prueba testifical constituyó en el testimonio de la señora Ortiz Castro. Además, se estipularon nueve (9) documentos. Luego de aquilatada la prueba presentada y dirimida la credibilidad de la testigo, el 24 de abril de 2024, notificada el 29 de abril siguiente, el DACo emitió la *Resolución* recurrida decretando la resolución del contrato de compraventa del vehículo Nissan Versa 2021, color gris claro otorgado con Master Motors y la resolución del contrato de venta por menor a plazos otorgado con Popular Auto, LLC. En síntesis, el DACo razonó que:[7]

> La parte vendedora querellada actuó de manera **dolosamente grave** al hacerle creer al querellante que este estaba adquiriendo el vehículo Nissan Versa de [2021] color gris oscuro [deportivo], cuando en realidad el contrato fue sobre el auto Nissan Versa de [2021] color gris claro, el cual se le entregó al querellante, viciando así el consentimiento del comprador querellante. Por tanto, procede la nulidad del contrato.

Así las cosas, el 8 de mayo de 2024, Master Motors presentó una *Moción en solicitud de reconsideración de resolución administrativa de 24 de abril de 2024, con archivo en autos de copia de su notificación el 29 de abril de 2024.*[8] En resumen, alegó que la señora Ortiz Castro adquirió, de manera libre y voluntaria, el Nissan Versa gris claro cuya descripción obraba en los documentos que firmó sin leer, y que, si este no hubiese sido el vehículo que esta

---

[6] *Íd.,* a las págs. 16-19.
[7] *Íd.,* a la pág. 26.
[8] *Íd.,* a las págs. 32-41.

deseaba y encontró desperfectos, debió negarse a llevarse el vehículo. De igual forma, meramente expresó que el DACo no poseía jurisdicción, pues no se realizó ningún pago a Popular Auto y que este reposeyó el auto.

Aún inconforme, Master Motors acude oportunamente ante nuestra consideración mediante el presente recurso imputándole a la agencia la comisión de los siguientes errores:

> **PRIMER ERROR:** ERRÓ EL DACO AL OBVIAR CONSIGNAR HECHOS PERTINENTES Y RELEVANTES EN SU RESOLUCIÓN.
>
> **SEGUNDO ERROR:** ERRÓ DACO AL CONCLUIR QUE LA RECURRENTE INCURRIÓ EN DOLO GRAVE QUE DA LUGAR A LA RESOLUCIÓN DEL CONTRATO ENTRE LAS PARTES, YA QUE EL CONTRATO FUE CONFIRMADO POR LA RECURRIDA.
>
> **TERCER ERROR:** ERRÓ EL DACO AL DECLARAR HA LUGAR LA QUERELLA Y ORDENAR LA CANCELACIÓN DEL CONTRATO DE COMPRAVENTA, EL CONTRATO DE VENTA AL POR MENOR A PLAZOS CON POPULAR AUTO Y LA DEVOLUACIÓN DEL DINERO PAGADO POR CONCEPTO DE PRONTO.
>
> **CUARTO ERROR:** ERRÓ EL DACO AL NO DESESTIMAR LA QUERELLA, SEGÚN SOLICITADO POR LAS PARTES QUERELLADAS, A[Ú]N CONOCIENDO QUE LA QUERELLANTE NUNCA REALIZÓ NI UN SOLO PAGO A POPULAR AUTO.

Luego de varios trámites ante esta *Curia*, el 6 de agosto de 2024, dimos por estipulada la Transcripción de la Prueba Oral (TPO) presentada el 2 de agosto. El 9 de agosto siguiente, la parte recurrente presentó un alegato suplementario. Así las cosas, el 13 de agosto de 2024, dictamos una *Resolución* concediendo a la parte recurrida el término de treinta (30) días para presentar su posición.

El 20 de agosto siguiente, la parte recurrida presentó su *Oposición de Revisión Judicial;* por lo cual, nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes, el expediente apelativo y la TPO; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Revisión judicial de las decisiones administrativas**

La revisión judicial de las decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurarse que estas desempeñen sus funciones conforme a la ley. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008). En el ámbito administrativo, los tribunales apelativos deben conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Asoc. Fcias. v. Caribe Specialty et al. II.*, 179 DPR 923, 940 (2010).[9]

No obstante, esta deferencia reconocida a las decisiones de las agencias administrativas habrá de ceder, solamente, cuando la misma no esté basada en evidencia sustancial, cuando la agencia erró en la aplicación de la ley y cuando su actuación resulte ser una arbitraria, irrazonable o ilegal. *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012). Por consiguiente, la revisión judicial de una decisión administrativa se circunscribe a analizar: (1) si el remedio concedido fue razonable; (2) si las determinaciones están sostenidas con evidencia sustancial; y (3) si erró la agencia al aplicar la ley. *Asoc. Fcias. v. Caribe Specialty et al. II, supra,* a la pág. 940.

En este ejercicio, nuestro más alto foro ha sido enfático en que las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. *Camacho Torres v. AAFET,* 168 DPR 66, 91 (2006). Quien las impugne tiene el deber insoslayable, para prevalecer, de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho,

---

[9] Véanse, también, *Martínez v. Rosado*, 165 DPR 582, 589, (2005); *Otero v. Toyota*, 163 DPR 716, 727 (2003).

descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. *Íd.*

Como corolario a lo anterior, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG), Ley núm. 38-2017, 3 LPRA sec. 9675, dispone que las determinaciones de hechos realizadas, por una agencia administrativa, serán sostenidas por el tribunal revisor si se encuentran respaldadas por evidencia suficiente que surja del expediente administrativo al ser considerado en su totalidad. *Pacheco v. Estancias*, 160 DPR 409, 432 (2003). De modo que, la parte afectada, deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial. *Otero v. Toyota*, supra, a la pág. 728. En consecuencia, nuestra función se circunscribe a considerar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo. *Íd.*

Por otro lado, las conclusiones de derecho son revisables en toda su extensión. Sección 4.5, Ley núm. 38-2017, *supra.* Sin embargo, ello "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia." *Otero v. Toyota*, supra, a la pág. 729. Cuando un tribunal llega a un resultado distinto, este debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.*

En conclusión, el tribunal solo podrá sustituir el criterio de la agencia por el propio cuando no pueda encontrar una base racional

para explicar la determinación administrativa. *Hernández, Álvarez v. Centro Unido,* 168 DPR 592 (2006).

**La jurisdicción del DACo**

El DACo fue creado en virtud de la Ley núm. 5 de 23 de abril de 1973, según enmendada, 3 LPRA sec. 341 *et seq.*, con el propósito primordial de proteger, vindicar e implementar los intereses y derechos de los consumidores, entre ellos, los compradores de vehículos en Puerto Rico. *Suárez Figueroa v. Sabanera Real,* 173 DPR 694 (2008); *Quiñones v. San Rafael Estates, S.E.,* 143 DPR 756, 769 (1997). Este organismo fue dotado con amplias facultades para dictar las acciones correctivas que sean necesarias para cumplir con el mandato de su ley habilitadora de proteger a los consumidores. *Quiñones v. San Rafael Estates, S.E.,* 143 DPR 756, 765-767 (1997). El Artículo 6 de dicha ley habilitadora, 3 LPRA sec. 341e, dispone en su inciso (d) que el DACo tiene el poder para poner en vigor, implementar y vindicar los derechos de los consumidores, tal como están contenidos en todas las leyes vigentes, a través de una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a derecho.

Por otro lado, la Ley núm. 7-1979, según enmendada, conocida como Ley de Garantías de Vehículos de Motor, 10 LPRA sec. 2051 *et seq.*, se aprobó para asegurar que los automóviles nuevos adquiridos en Puerto Rico tuvieran las mismas garantías de fábrica que se otorgan en Estados Unidos. Artículo 3, 10 LPRA sec. 2053. Con el fin de implantar la referida legislación, el DACo aprobó el *Reglamento de Garantías de Vehículos de Motor*, Reglamento Núm. 7159 de 6 de junio de 2006 (Reglamento Núm. 7159), cuya finalidad consiste en: (1) proteger adecuadamente a los consumidores y sus inversiones en la adquisición de un vehículo de motor; (2) procurar

que el vehículo de motor que adquiera todo consumidor en Puerto Rico sirva para los propósitos que fue adquirido y que reúna las condiciones mínimas necesarias para garantizar la protección de su vida y propiedad; y (3) prevenir las prácticas ilícitas en la venta de vehículos de motor en Puerto Rico. Esto, sin importar que el vehículo comprado por el consumidor sea uno nuevo o usado.

Además, y en lo aquí pertinente, la Regla 37 del Reglamento Núm. 7159 establece que nada en lo que así se dispone limita el derecho del consumidor a ejercer cualquier acción que le reconozcan las leyes del Estado Libre Asociado de Puerto Rico, así como las acciones de saneamiento por evicción o vicios ocultos, y la acción redhibitoria que reconoce el Código Civil para los contratos de compraventa. *Polanco v. Cacique Motors*, 165 DPR 156, 165 (2005).

De igual manera, la ley habilitadora del DACo, en cuanto a lo que nos concierne, autoriza al Secretario a reglamentar y a fiscalizar los anuncios y prácticas engañosas cursadas en el ámbito comercial. Artículo 6, 3 LPRA sec. 341e, (j). De esta manera, se crea e implementa el Reglamento contra Prácticas y Anuncios Engañosos, Reglamento Núm. 7932 de 15 de octubre de 2010 (Reglamento Núm. 7932), en el que se incorporó en nuestro ordenamiento un esquema reglamentario propicio para la protección de la confianza del sector consumidor, ello al proscribir tanto las prácticas, como los anuncios engañosos. Regla 2 del Reglamento Núm. 7932. Dicho reglamento establece que constituye una *práctica engañosa "cualquier acto, práctica, curso de conducta, mecanismo de persuasión, ofrecimiento, información o promesa hecha, aparentemente hecha o sugerida, que fuere engañosa, falsa fraudulenta o que de cualquier forma tienda al engaño, o mediante la cual se tergiversen o puedan malinterpretarse los verdaderos hechos de las cosas."* Regla 5W del Reglamento Núm. 7932. En este contexto y de acuerdo a lo estatuido en el reglamento

en cuestión, el referido concepto incluye, entre otras, el concurso de la siguiente conducta:

> 1. **Representar o expresar un hecho** o una oferta **si tal declaración es engañosa o falsa**, o posee la tendencia o capacidad para confundir, o si no se tiene la información suficiente para sustentarla, **o se ocultare un dato relevante**.[10]

**Dolo contractual**

El contrato es el negocio jurídico bilateral en el cual dos o más partes expresan su consentimiento, según se ha establecido en la ley, para así crear, regular, modificar o extinguir una obligación. Artículo 1230 del Código Civil de 2020, 31 LPRA sec.9751. Estas obligaciones acordadas en los contratos tienen fuerza de ley entre las partes, sus sucesores y terceros en las formas que establezca la ley. Artículo 1233, *supra*, 31 LPRA sec. 9754. Para que un contrato se entienda válido es necesario que concurran tres elementos, estos son: consentimiento, causa y objeto. *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR 448, 455 (2014). Una vez median dichos elementos necesarios para la existencia de un contrato, este se convierte en la ley que rige entre las partes. Artículo 1233 del Código Civil de 2020, 31 LPRA sec. 9754.

Por otro lado, los vicios de la voluntad son el error, el dolo, la violencia y la intimidación. Artículo 285 del Código Civil de 2020, 31 LPRA sec.6191. Todo negocio en donde medie un vicio de la voluntad, es decir error, dolo, violencia o intimidación, es anuble si este fue determinante para el otorgamiento del negocio. Artículo 286 del Código Civil de 2020, 31 LPRA sec. 6192.

El dolo es "una falsedad inducida por la otra parte". M. García Cárdenas, *El Nuevo Derecho de Obligaciones y contratos: Código Civil 2020*, 1ra ed., Puerto Rico, Ed. MJ Editores, a la pág. 386. Mientras que el dolo grave es:

---

[10] Véase, Regla 7 (B) (1) del Reglamento Núm. 7932.

acción u omisión intencional por la cual una parte o un tercero **inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado**.[11]

El Tribunal Supremo ha expresado que el dolo está compuesto por las malas artes, es contrario a la honestidad y es idóneo para sorprender la buena fe ajena, se realiza generalmente para beneficio propio, "en que viene a resumirse el estado de ánimo de aquel que no sólo ha querido el acto, sino que, además, ha previsto y querido las consecuencias antijurídicas provenientes de él". *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 229 (2007) citando a *Colón v. Promo Motor Imports, Inc.*, 144 DPR 659, 666 (1997). El negocio jurídico es nulo cuando; (a) si el objeto, la causa o el consentimiento son inexistentes; (b) si el objeto o la causa son ilícitos; (c) si carece de las formalidades exigidas por la ley para su validez; o (d) si es contrario a la ley imperativa, la moral o el orden público. Artículo 342 del Código Civil de 2020, 31 LPRA sec. 6312.

Por último, apuntalamos que reiteradamente, nuestro Tribunal Supremo se ha referido al Código Civil como "*espina dorsal*" de nuestro derecho privado y que debe usarse como un recurso supletorio en situaciones donde son aplicables leyes especiales. *Santini Rivera v. Serv. Air, Inc.*, 137 DPR 1, 35-36 (1994); *Rosa Resto v. Rodríguez Solís*, 111 DPR 89, 94 (1981).

**III.**

En apretada síntesis, el recurrente adujo que erró el DACo al conceder los reclamos instados por la señora Ortiz Castro. Además, señaló que dicha agencia erró al no desestimar la querella por carecer de jurisdicción. Por estar los errores relacionados entre sí, los discutiremos conjuntamente.

De entrada, apuntalamos que el recurrente falló en especificar, en el recurso, cuáles fueron los hechos probados y no

---

[11] Artículo 292 del Código Civil de 2020, 31 LPRA sec. 6211.

consignados en el dictamen recurrido, según alegó en el escrito ante nuestra consideración. Por otra parte, el planteamiento principal, y sobre el que se basa el recurso de revisión judicial es uno sencillo. Aduce el recurrente que el contrato de compraventa fue ratificado por la recurrida <u>cuando esta se llevó el vehículo</u> y que todos los documentos que describen el vehículo fueron firmados por ella. Sobre esto, indicó que "[a]quí no se trata de que haya existido dolo, engaño o vicios en el consentimiento. Se trata de una parte que se arrepintió de una compra y optó por incumplir con su obligación contractual, tanto frente a Master Motors como frente a Popular Auto."[12] Sin embargo, en su análisis el recurrente ignora los hechos acontecidos **previos a la entrega del vehículo** según fueron narrados por la recurrida en la vista administrativa y creídos por el foro juzgador.

Surge de la TPO que la recurrida tenía, a la fecha de los hechos 22 años de edad,[13] y que junto a su abuela de 85 años edad,[14] acudió a las instalaciones de Master Motors para adquirir una guagua Hyundai Tucson.[15] Al esta fallar en tener crédito, no cualificó para la compra de dicho vehículo, incluso aún incluyendo a su abuela como codeudora no cualificaba. Así las cosas, el vendedor quien fue identificado como Roberto, le mostró varios vehículos cuyo precio era menor a una SUV.[16] Surge que este le mostró un Nissan Versa SR deportivo, gris oscuro y con aros, el cual ella probó y le gustó.[17] Luego fue referida a firmar los documentos con el gerente de Master Motors, Sr. Jorge Zayas, y en el local no había personal del Banco Popular.[18] <u>Destacamos que ni el vendedor ni el gerente fueron testigos en el caso de autos</u>.

---

[12] Véase, *Petición de Revisión Judicial,* a la pág. 20.
[13] TPO a la pág. 25; línea 12.
[14] TPO a la pág. 29; líneas 9-10.
[15] TPO a la pág. 23; líneas 17-18.
[16] TPO a la pág. 24.
[17] TPO a las págs. 24-25.
[18] TPO a las págs. 25-26.

Entonces, bajo la creencia de que había cualificado para la compra del Nissan Versa 2021 SR, tanto ella como su abuelita firmaron todos los documentos que le fueron indicados por el gerente.[19] "... ellos me dicen: pon las iniciales aquí para que te puedas ir con el carro".[20] En ningún momento el gerente le manifestó que no cualificaba para la compra Nissan Versa SR y que le darían otro vehículo. "... ellos me dicen: "en lo que tú firmas, te lavamos el vehículo".[21] Tampoco fue informada sobre los detalles del financiamiento.[22] Ni le dieron la oportunidad para leer los documentos, "... ellos tenían todos [los] papeles ahí; firma aquí, firma aquí, firma aquí, no me dieron la oportunidad de leer".[23]

Una vez completadas todas las transacciones, cuando la señora Ortiz Castro va a recibir su carro, para su sorpresa le entregaron **otro distinto**, un "... Nissan con aro de lata y muchos defectos que tenía".[24] Le reclamó al empleado del recurrente y este le contestó que ese fue el vehículo que probó porque el Nissan Versa SR ya estaba vendido.[25] "Entonces, por ende, me fui con el carro porque yo entiendo que ya le firmé, pero me fui, abrí la gaveta porque me habían entregado el, el sello del Expreso y mi licencia provisional, entonces yo la fui a poner en la gaveta, la gaveta está, est[á] ro[ta], cuando abro se cae".[26]

Además, surge de la TPO que no solo fue otro vehículo el que le entregaron, sino que este tenía múltiples defectos.[27] "... cuando voy a salir fui a tocar bocina, tampoco funcionaba ... y me vine a percatar más a la noche que tenía dos cantazos en el área del estribo de abajo, de la puerta, uno en la puerta al frente y otro la puerta

---

[19] TPO a la pág. 29; línea 6.
[20] TPO a la pág. 27; líneas 15-16.
[21] TPO a la pág. 28; líneas 7-8.
[22] TPO a la pág. 33.
[23] TPO a la pág. 34; líneas 11-13.
[24] TPO a la pág. 28; líneas 9-10; a la pág. 50; líneas 8-13; a la pág. 51; líneas 6-9.
[25] TPO a la pág. 30; líneas 15-23: a la pág. 51.
[26] TPO a las págs. 30- 31; líneas 24-25 y líneas 1-4, respectivamente.
[27] TPO a la pág. 39; líneas 1-11.

atrás, que le envié fotos a Robert y él me dijo: "que iban a resolver este problema". Le pregunte sobre las gomas, me cuestiona, [...] las gomas estaban pela."[28] El baúl no abría y la bocina del radio no estaba funcionando correctamente.[29] La recurrida fue en (2) dos ocasiones donde Master Motors para indicarle los defectos.[30] Así las cosas, apenas cinco (5) días después de la transacción entregó el carro al recurrente y le notificó al banco.[31] La recurrida dio un pronto de $500.[32]

De lo antes consignado surge con meridiana claridad que el foro recurrido no erró al concluir que "[l]a parte vendedora querellada actuó de manera dolosamente grave al hacerle creer al querellante que este estaba adquiriendo el vehículo Nissan Versa [SR] color gris oscuro, cuando en realidad el contrato fue sobre el auto Nissan Versa ... color gris claro, ... viciando así el consentimiento del comprador querellante. Por tanto, procede la nulidad del contrato."[33]

Como indicamos, en nuestro estado de derecho se reconoce como vicios al consentimiento el error, el dolo, la violencia y la intimidación, los cuales son causantes de la nulidad o anulabilidad de un negocio jurídico. Asimismo, apuntalamos que el dolo grave es aquel que **induce a otra parte** a otorgar un negocio jurídico que de otra manera no hubiera realizado.[34] Por tanto, en el caso de autos el DACo correctamente aplicó el derecho y concluyó que la señora Ortiz Castro fue *engañada* por Master Motors durante la transacción de compraventa. Incluso, no cabe duda de que el personal de Master Motors realizó una falsa representación al mostrarle a la recurrida un vehículo, probarlo y luego entregarle uno distinto. Sin duda, la

---

[28] TPO a la pág. 31; líneas 8-24.
[29] TPO a la pág. 32; líneas 8-9.
[30] *Íd.,* línea 14.
[31] TPO a la pág. 35 y la pág. 60.
[32] TPO a la pág. 35; líneas 20-22; a la pág. 38; líneas 15-24.
[33] Véase, Apéndice del Recurso, a la pág. 26.
[34] Véase, Artículo 292 del Código Civil de 2020, 31 LPRA sec. 6211.

recurrida fue inducida a otorgar un negocio jurídico que de otra manera no hubiera realizado.

De igual manera, la prueba demostró que el personal de Master Motors incurrió en un práctica desleal y engañosa con el fin de venderle un vehículo a la recurrida. Así lo concluyó inequívocamente el foro administrativo sentenciador tomando como base para ello la prueba que le mereció entero crédito.

En el último error, el recurrido señaló que procedía la desestimación de la querella debido a que el DACo carecía de jurisdicción. En cuanto a este error, meramente aduce que la recurrida nunca pagó el préstamo del auto y que el mismo fue reposeído por Popular Auto. **No presentó ningún argumento en derecho que demostrara la alegada falta de jurisdicción**. Nuestro reglamento exige a las partes una discusión de los errores señalados, incluyendo las disposiciones de ley y la jurisprudencia aplicables.[35] Por lo cual, no estamos en posición de poder ejercer nuestra función revisora en cuanto a dicho error. Sin embargo, entendemos meritorio consignar que surge de la TPO, que antes de comenzar el testimonio de la recurrida, el representante legal de Popular Auto, LLC informó que el vehículo fue entregado primero al dealer y posteriormente fue reposeído por el banco a través del proceso de reposición involuntaria.[36] También informó que el vehículo está en poder de Popular Auto,[37] y que el contrato "para efectos del sistema aparece como cerrado...", los procedimientos en el banco están en suspenso.[38] Destacamos que ningún funcionario de Popular Auto fue testigo en la vista administrativa.

En virtud de lo antedicho, y luego de haber revisado el expediente administrativo incluyendo la transcripción de la prueba

---

[35] Véase, la Regla 59 (C) (f) del Reglamento del Tribunal de Apelaciones.
[36] TPO a la pág. 9; líneas 21-24.
[37] TPO a la pág. 11; líneas 11-13.
[38] TPO a la pág. 15; líneas 11-20.

oral; así como considerando el principio relativo a la deferencia a las decisiones de los organismos administrativos, colegimos que no erró el DACo al concluir que Master Motors incurrió en dolo causando un vicio en el consentimiento de la recurrida lo cual anuló el negocio jurídico celebrado. Independientemente de si la recurrida tuvo o no el tiempo para leer los documentos que estaba firmando, las actuaciones previas a dicho acto realizadas por Master Motors viciaron su consentimiento, esto, desde el momento en que maquinaron enseñarle y probar un vehículo distinto al que sabían le iban a entregar. En conclusión, los errores señalados no se cometieron.

Por último, precisa advertir que recientemente nuestro alto foro resolvió en *Otero Rivera v. Bella Retail Group, Inc. y otros*, 2024 TSPR 70, que la imposición de solidaridad a la entidad financiera no procede en derecho. En consecuencia, se establece que las prestaciones serán devueltas de manera independiente, según la parte que le corresponda a cada cual. En el caso de epígrafe, Master Motors solo deberá devolverle a la recurrida los $500 que fueron entregados por ella como pronto, más los intereses correspondientes según ordenó el DACo. Advertimos que el vehículo fue entregado por la recurrida a los cinco (5) días de haberlo comprado, es decir, antes de que comenzara la obligación de realizar el primer pago a la entidad financiera. A su vez, el recurrente y Popular Auto, LLC deberán cumplir con las órdenes emitidas por el foro administrativo en el dictamen recurrido.

**IV.**

Por los fundamentos que nos anteceden, confirmamos la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones